# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 99-3473

_____

| | | |
|---|---|---|
| John Hoyle, individually and on behalf of Arkansas Taxpayers' Rights Ass'n, and as representative of the class of more than 100,000 Arkansans who petitioned for Proposed Constitutional Amendment 4 of 1998 and further as representative of the class of All Registered Voters of the State of Arkansas; Joe Hoyle; Earl Oxford; Tom Tinsley, | * * * * * * * * * * * | |
| Appellants, | * * | |
| v. | * * | |
| Sharon Priest, in her official capacity as Secretary of State, and in her capacity as Chairman of the State Board of Election Commissioners; Mike Huckabee, in his official capacity as Governor of the State of Arkansas; Doris Tate, in her official capacity as Sebastian County Clerk, as representative of the class of all county clerks and election officials of the State of Arkansas, | * * * * * * * * * * * * * * | Appeal from the United States District Court for the Western District of Arkansas. |
| Appellees. | * | |

_____

Submitted:  March 16, 2001
Filed:  September 11, 2001
_____

Before  HANSEN and HEANEY, Circuit Judges, and FENNER,[1] District Judge.
_____

HANSEN, Circuit Judge.

Appellants were sponsors of proposed Arkansas constitutional Amendment 4, which sought to abolish state property taxes and implement an alternative taxation regime based upon increased sales and use tax.  The Arkansas Supreme Court ordered the proposition removed from the November 3, 1998, general-election ballot, holding that an insufficient number of signatures contained within the initiative petition mandated its removal.  Roberts v. Priest, 975 S.W.2d 850, 856 (Ark. 1998).  Appellants filed this action in federal court asserting that Arkansas's voting initiative procedure violates their First, Fifth, and Fourteenth Amendment rights.  The district court[2] dismissed appellants' complaint.  On appeal, appellants again contend that the state's balloting procedure violates their constitutional rights.  We affirm.

I.

A petition sponsor in Arkansas is required to submit a ballot title, text, and popular name to the Arkansas Attorney General for review and approval of an

_____

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri, sitting by designation.

[2]The Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas.

initiative.  <u>See</u> Ark. Code Ann. §7-9-107(a) (Michie Supp. 1997).[3]  Once the suggested initiative is submitted to the Attorney General, he may approve the ballot language as presented, substitute and certify more suitable language, or reject the initiative in its entirety, giving the sponsors an opportunity to redraft the proposed measure.  Ark. Code Ann. § 7-9-107(b), (c).  In the case of Amendment 4, the Attorney General rejected the sponsors' proposed ballot title and substituted and certified a revised title.  After receiving the Attorney General's certification, appellants proceeded to collect voter signatures for placement on the ballot.

On July 2, 1998, appellants filed proposed Amendment 4 with the Arkansas Secretary of State for ballot certification.  The sponsors were required to submit at least 71,955 qualified signatures in order for the initiative to be eligible for entry on the ballot.  <u>See</u> Ark. Const. amend. 7 (requiring the signatures of legal voters equal to at least ten percent of the total number of votes cast for governor in the preceding election).  The Secretary determined that appellants submitted 72,810 valid, legal voter signatures.  Shortly after the Secretary certified the measure, an opposition group challenged the legal sufficiency of the signatures contained within the initiative petition and the adequacy of the ballot title.  The Arkansas Supreme Court appointed a special master to conduct proceedings related to the signature challenge.  The master's report filed with the supreme court revealed that 1830 signatures counted by the Secretary of State should have been excluded due to the absence or falsity of the canvasser's affidavit, forgery, or evidence that the petition signer was not a registered voter.  After reviewing these findings, the supreme court stated, "[w]here . . . the sponsor fails to comply with and ignores and abuses these simple procedural requirements, established by our Constitution to protect all the residents and taxpayers of Arkansas, neither the

[3]At the time appellants began the initiative process with proposed Amendment 4, only the Attorney General was statutorily authorized to review ballot language before the petition was circulated for signatures.  <u>See</u> <u>id.</u>  The Arkansas Supreme Court approved the Arkansas General Assembly's modification of this procedure, permitting precertification judicial review in <u>Stilley v. Priest</u>, 16 S.W.3d 251, 256 (Ark. 2000).

Secretary of State nor this court can cure such a deficiency resulting solely from the sponsor's conscious disregard of the Constitution's requirements." Roberts, 975 S.W.2d at 856. The court did not reach the issue of the adequacy of the ballot title but ordered proposed Amendment 4 removed from the general-election ballot due to an insufficient number of signatures. Id.

Appellants filed an amended complaint in the federal district court on May 17, 1999, challenging the constitutionality of the Arkansas initiative procedure under provisions of 42 U.S.C. §§ 1981, 1983, 1985, and 1988 (1994 & Supp. IV 1998). The district court dismissed appellants' complaint for failure to state a claim upon which relief could be granted. Appellants now appeal.

II.

Appellants first contend that the process by which an initiative is given a substituted ballot title by the Attorney General violates their right to due process as guaranteed by the Fifth and Fourteenth Amendments, because the sponsor of a ballot initiative has no avenue of redress to challenge the Attorney General's actions until after the necessary signatures are collected. "[T]he right to a state initiative process is not a right guaranteed by the United States Constitution, but is a right created by state law." Dobrovolny v. Moore, 126 F.3d 1111, 1113 (8th Cir. 1997), cert. denied, 523 U.S. 1005 (1998). Accordingly, the procedures required to be followed in the initiative process are state created and defined. Id. Therefore, "[t]he state retains the authority to interpret [the] scope and availability of any state-conferred right or interest." Id. (internal quotations omitted).

Through Amendment 7 of the Arkansas Constitution, the people of Arkansas reserve to themselves the power to propose ballot initiatives. Until recently, only the Attorney General was authorized to review the ballot language prior to the sponsor circulating the measure for signatures. Subsequent to appellants' filing their appeal with

4

our court, the Arkansas Supreme Court addressed whether Arkansas Act 877 of 1999 (codified at Ark. Code Ann. §§ 7-9-501 to -506 (Michie Supp. 2001)), which provides for an early judicial review of the text of the popular name and ballot title of proposed amendments, was consistent with Amendment 7. The supreme court held that Amendment 7 does not prohibit a precertification review of proposed initiatives. Stilley, 16 S.W.3d at 254. The court stated that early review of the text of an initiative by the Secretary of State and the supreme court did not impede the later certification by the Secretary of the petition once the sponsors obtain the requisite signatures. Id. at 255. The court acknowledged that, in some cases, two reviews will be warranted: a precertification review addressing the text of the ballot title and popular name, and a second review after the petition's certification by the Secretary of State addressing the sufficiency of the signatures. Id. at 256. In light of the enactment of Act 877 and the Arkansas Supreme Court's holding in Stilley, appellees filed a motion to dismiss this point of appellants' appeal as moot. We grant their motion and agree that appellants' contention is moot; a substantial avenue of redress is now permitted prior to petition sponsors collecting signatures. See Powell v. McCormack, 395 U.S. 486, 496 (1969) ("[A] case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.") (internal quotations omitted).

Appellants also argue that the district court erred when it concluded that Arkansas has a legitimate state interest in making the signing of a ballot petition a crime in certain instances and that core political speech is not impeded under this process. In order to qualify for ballot certification under Arkansas law, a proposed constitutional amendment must receive signatures of legal voters, consisting of at least ten percent of the total number of votes cast for the office of governor in the preceding general election. Ark. Const. amend. 7. A "legal voter" in this context is defined as a citizen who is registered to vote at the time the citizen signs the petition. Ark. Code Ann. § 7-9-101(8) (Michie Supp. 1997). A person is considered a "qualified elector"--eligible to sign a ballot petition--once his voter registration card is received and acknowledged by his county registrar. Ark. Const. amend 51, § 9(c); Ark. Code Ann. §§ 7-1-101(10),

7-9-103(a)(1) (Michie Supp. 1997). Appellants argue that county registrars' voter registration lists should not be definitive evidence that a person is a registered voter because persons may consider themselves registered after completing a registration card but before the application is processed by the county. Thus, appellants argue, no person should be legally disqualified from signing a petition solely on this ground. Given the purpose behind Arkansas Amendment 7, we respectfully disagree.

In support of appellants' motion to dismiss, the Arkansas Secretary of State contended that the registered voter requirement was necessary to ensure "that ballot measures enjoy significant support of interested citizens who are registered to vote on them." (J.A. at 37.) The state's mandate counting only signatures of registered voters toward petition certification may make it more difficult to have an issue placed on the ballot, but such a hurdle is not constitutionally impermissible. See, e.g., Wellwood v. Johnson, 172 F.3d 1007, 1009 (8th Cir. 1999) (holding Arkansas's increase in number of signatures required on local-option ballot petitions did not violate the Constitution). Notably, a panel of our court held in Dobrovolny that a similar signature requirement contained within the Nebraska Constitution was constitutionally valid because the requirement in no way impeded the supporters of a measure from circulating a petition or from expressing their views. 126 F.3d at 1112. Like the law at issue in Dobrovolny, the Arkansas law is content neutral and merely regulates who qualifies to legally sign an initiative petition, a restriction which does not violate the First Amendment. See, e.g., Biddulph v. Mortham, 89 F.3d 1491, 1500-01 (11th Cir. 1996) (concluding the Constitution requires the initiative process be uniformly applied and content neutral, not efficient or user-friendly), cert. denied, 519 U.S. 1151 (1997); Taxpayers United for Assessment Cuts v. Austin, 994 F.2d 291, 296-97 (6th Cir. 1993) ("[T]he state may constitutionally place nondiscriminatory, content-neutral limitations on the plaintiffs' ability to initiate legislation.").

As Justice Glaze of the Arkansas Supreme Court stated, "if initiative-petition signers were not required to be registered voters, the Secretary of State would have no

list of voters to verify petitions circulated pursuant to [Arkansas Constitution] Amendment 7." Roberts, 975 S.W.2d at 856 (Glaze, J., concurring). The registered voter requirement seeks to exclude those signatures that are falsely obtained or forged and aims to protect the state's initiative process from abuse. See Hargis v. Hall, 120 S.W.2d 335, 339 (Ark. 1938) (holding that the express purpose of Amendment 7 is to ensure petition signatures are genuine). Because the state law regulating the initiative procedure does not restrict political speech and the state's interest in protecting the integrity of its initiative process is paramount, we hold that the challenged requirement is constitutionally sound.

Appellants contend that the Voting Rights Act, 42 U.S.C. §§ 1971-1974e (1994), is also implicated by the registered-voter requirement. Because under the Arkansas statute a person who is not a qualified elector can be held criminally responsible for knowingly signing a ballot petition, see Ark. Code Ann. § 7-9-103(b)(3), appellants assert that subjecting "a hapless petition signer" to a possible felony violates the Voting Rights Act. (Appellant's Br. at 59.) First and foremost, appellants lack standing to raise this claim because they have suffered no injury in fact resulting from the statutory prerequisite. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). We are aware of no instance where anyone, let alone the appellants, has been prosecuted for violating section 7-9-103(b)(3). Appellants merely assert a hypothetical and conjectural injury which is not cognizable. See Lujan, 504 U.S. at 560.

Even if appellants had standing to pursue this claim, their contention is without merit. The specific Arkansas statute punishing persons who violate the Arkansas law regulating initiative and referendum petitions subjects a citizen to a Class A misdemeanor--not a felony--for knowingly signing a ballot petition when that citizen is not legally eligible. Ark. Code Ann. § 7-9-103(b)(3). Contrary to appellants' assertion, no citizen is being denied the right to vote based on "an error or omission . . . relating to . . . registration, or other act requisite to voting . . . [which] is not material in determining whether such individual is qualified under State law to vote in such

election." 42 U.S.C. § 1971(a)(2)(B) (1994). Requiring that petition signers be qualified electors simply protects the state and its citizens against both fraud and caprice, valid concerns considering the time and expense needed to undertake the initiative process. We conclude that the challenged practice is material, and thus outside the scope of 42 U.S.C. § 1971(a)(2)(B). See Howlette v. City of Richmond, Va., 580 F.2d 704, 705 (4th Cir. 1978) (affirming constitutionality of city referendum procedure requiring that the signatures of qualified voters on a referendum petition be verified by a notary and subjecting those who take the oath to possible criminal liability for perjury); cf. Delgado v. Smith, 861 F.2d 1489, 1493 (11th Cir. 1988) (excluding initiative materials distributed by private citizens from the protections afforded by the Voting Rights Act), cert. denied, 492 U.S. 918 (1989); Montero v. Meyer, 861 F.2d 603, 607 (10th Cir. 1988) (holding an initiative petition was not a "prerequisite to voting" and therefore the Voting Rights Act did not apply), cert. denied, 492 U.S. 921 (1989).

III.

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

8