# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 20-2029

———————————————

Selective Insurance Company of South Carolina

*Plaintiff - Appellant*

v.

Amit Sela

*Defendant - Appellee*

————————

Appeal from United States District Court
for the District of Minnesota

————————

Submitted: March 16, 2021
Filed: August 30, 2021

————————

Before SHEPHERD, ERICKSON, and KOBES, Circuit Judges.

————————

KOBES, Circuit Judge.

Selective Insurance Company of South Carolina sued Amit Sela for a declaration of no coverage of Sela's hailstorm-damaged property, alleging fraud by misrepresentation and breach of contract. Sela counterclaimed and later added a claim for bad faith denial of benefits under Minn. Stat. § 604.18, which would entitle him to taxable costs. A jury found Sela did not commit fraud, and a panel of

appraisers assessed damages. The district court[1] found that Selective denied coverage in bad faith, and it awarded taxable costs and prejudgment interest. Selective appeals, and we affirm.

## I.

Amit Sela had the misfortune of two hailstorms severely damaging his Minnesota home. In 2010, the first caused over half a million dollars in loss. Before submitting a claim with his original insurer or beginning any repairs, Sela secured a new insurance policy with Selective. The policy did not exclude coverage for pre-existing damage, but did preclude coverage if an insured "willfully and with intent to defraud[,] concealed or misrepresented any material fact or circumstance relating to [his] insurance." Selective App. Vol. I at 185.

Selective appraised the property before issuing the policy. It assigned a $1.6 million value on the home and found its complicated concrete-tile and copper roof in average condition. Sela then filed a claim with his original insurer and received a $510,787.23 settlement for the actual cash value of his loss. Neither the terms of this settlement nor his new policy with Selective required Sela to repair all of the 2010 damage. In fact, the district court found that Sela put off the more complicated, expensive projects and had only repaired about $250,000 worth of damage when a second storm hit in 2015.

Sela filed a property loss notice for roof damage from the 2015 storm, and Selective sent an adjuster to inspect the property. The adjuster told Sela that he had "a catastrophic claim" and escalated it to a team that handled larger losses. D. Ct. Dkt. 282 at 6 (citation omitted). After spending several hours examining the

---

[1]The Honorable Patrick J. Schiltz, United States District Judge for the District of Minnesota.

property, it was clear to the new adjuster that the loss was "significant." Bench Trial Tr. at 80:25.

Sela's claim seemed normal until Selective received an anonymous letter that blew it off course. The letter accused Sela of being a serial fraudster who was "abusing the [insurance] system and turning it into a profit center and cash flow machine." Selective App. Vol. I at 457. It referred to his conviction for tax evasion and fraud and alleged that he had workers intentionally damage his home to recover on the 2010 claim. The letter "was quickly revealed to be unreliable." D. Ct. Dkt. 282 at 9.

Still, it prompted Selective to bring on its special investigation unit to look into the potential fraud. The unit's central concern was its belief that Sela said he had repaired all of the 2010 damage while only providing documentary support for about $200,000 of work. Eventually, Selective denied Sela's claim based on fraud.

Selective filed this lawsuit for a declaration of no coverage, alleging breach of contract and fraud by misrepresentation. Sela filed a counterclaim for breach of the insurance policy, seeking full payment of all covered losses. Sela then amended his counterclaim to add a claim for a bad faith denial of benefits under Section 604.18.

The case went to trial with the parties expecting the jury would decide both coverage and damages, then the court would decide bad faith in a separate bench trial. But after a dispute over expert damages witnesses, the parties reached a new agreement, which the district court memorialized as:

> [W]e will not hear any evidence regarding damages. The jury will only be asked to determine the fraud issue. . . . If the jury finds no fraud, then I will find a breach of contract as a matter of law. The parties will appraise damages, and then we will have to have a bad faith proceeding after that as well . . . .

Jury Trial Tr. Vol. III at 195:10–20. In other words, the jury would decide coverage, an appraisal panel would determine damages, and the court would decide bad faith. The plan worked for a while: the jury quickly found no fraud, damages went to appraisal, and a date for the bench trial was set. But a week before the appraisal was finished, Selective moved for summary judgment on Sela's Section 604.18 claim, arguing it was barred because his claim would be resolved by appraisal.

The district court denied Selective's motion, held a bench trial, and found that Selective denied Sela's claim in bad faith. It awarded judgment to Sela for $1,024,233.10, which included the actual cash value award, taxable costs under Section 604.18, and prejudgment interest under Minn. Stat. § 549.09, subdiv. 1. Selective appeals, arguing that the district court erred by (1) allowing Sela's Section 604.18 claim to proceed; (2) finding Selective denied the claim in bad faith; and (3) awarding prejudgment interest.

## II.

Selective first appeals the district court's decision to allow Sela's Section 604.18 claim to go forward. The provision allows an insured to recover taxable costs if an insurer lacks a reasonable basis for denying benefits and does so knowing of or "in reckless disregard of the lack of a reasonable basis." Minn. Stat. § 604.18, subdiv. 2(b). Subdivision 4(b) requires the bad faith denial to "be determined by the court in a proceeding subsequent to any determination by a fact finder of the amount an insured is entitled to under the insurance policy." Minn. Stat. § 604.18, subdiv. 4(b). And Subdivision 4(c) provides that recovery "is not available in any claim that is resolved or confirmed by arbitration or appraisal." Minn. Stat. § 604.18, subdiv. 4(c). We review the district court's interpretation of state law *de novo*. *Union Pac. R.R. Co. v. Reilly Indus., Inc.*, 215 F.3d 830, 840 (8th Cir. 2000).

Selective says the district court erred in two ways. First, it says that Sela has not met the Subdivision 4(b) prerequisite, which it narrows to allow recovery only if the bench trial was "subsequent to a *jury's* determination of the benefits to be paid under the insurance policy." Selective Br. 12 (emphasis added). But that is not what the statute says. Selective swaps "fact finder" for "jury." As support, it quotes the Minnesota Supreme Court in *Wilbur v. State Farm Mutual Automobile Insurance Co.,* a case that was simply applying the law to a case involving a jury. 892 N.W.2d 521, 525 (Minn. 2017) (considering whether "proceeds awarded" by a jury under Section 604.18 were capped by insurance policy limits). Here, the bench trial on bad faith was subsequent to an appraisal panel's determination of the amount to be paid under Sela's insurance policy. And Selective concedes that an appraisal panel can be a fact finder, so Sela meets Subdivision 4(b)'s requirement.

Second, Selective says that Sela's bad faith claim is barred by Subdivision 4(c) because appraisal resolved his hail-damage claim. This argument also falls short. The appraisal panel decided damages, but a jury resolved Sela's claim. Section 604.18 does not define "resolve," and no Minnesota court has interpreted Subdivision 4(c). It is our job "to predict how [the Minnesota Supreme Court] would decide the issue." *Ashley Cty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). Under Minnesota law, courts must construe statutory language according to its "common and approved usage." Minn. Stat. § 645.08(1). And the ordinary meaning of "resolve" is "to solve (a problem of any kind)." 23 Oxford English Dictionary 724 (2d ed. 1989).

As the district court recognized, the problem here was not how much Sela was entitled to; it was whether he was entitled to anything at all. Only a jury, an arbitrator, or the parties themselves could solve that problem—appraisal could not. *See* D. Ct. Dkt. 122 at 32 (finding Selective was right to refuse appraisal because the

dispute was over coverage and appraisers have no authority to resolve that issue). Damages, as decided by appraisal, flowed from the resolution of the coverage issue but did not "resolve" the claim. Because neither Subdivision 4(b) nor 4(c) prevented Sela's claim from going forward, the district court did not err.

III.

Selective next appeals the district court's award of taxable costs under Section 604.18, subdivision 2(a). That provision authorizes the court to award taxable costs if the insured can show that the insurer had no reasonable basis for denying the benefits of the insurance policy—the objective prong—and that the insurer either knew it lacked a reasonable basis or recklessly disregarded the lack of reasonable basis—the subjective prong. *See Peterson v. W. Nat'l Mut. Ins. Co.*, 946 N.W. 2d 903, 910–12 (Minn. 2020). The district court found that Sela met his burden on both prongs. Selective argues the district court applied the wrong standard under the first prong and did not have sufficient evidence to satisfy the second.[2] We review the district court's findings of facts in a civil bench trial for clear error and mixed questions of law and fact *de novo*. *Ellis v. Great-West Life Assur. Co.*, 43 F.3d 382, 386 (8th Cir. 1994).

A. Objective Prong

Under the objective prong, the question is "whether a reasonable insurer under the circumstances would not have denied the insured the benefits of the insurance policy." *Peterson*, 946 N.W.2d at 910. Selective argues that the district court erred

---

[2]Selective also argues that Section 604.18 prevents courts from acting as factfinders, instead requiring them to find bad faith as a matter of law. But we will follow the Minnesota Supreme Court in *Peterson*, which patently rejected that argument. *See* 946 N.W.2d at 915.

in considering its specific conduct.[3]  As Selective sees it, this made the objective prong subjective.

But Selective reads *Peterson* too broadly.  That case did not hold that courts could never analyze evidence of an insured's conduct under the objective prong.  *See id.* at 916 (acknowledging "many of the same evidentiary reasons" supported both the objective and subjective inquiries).  Instead, the Minnesota Supreme Court found no clear error in the district court's decision not to credit the insurer's proposed justification for denial, which necessarily implicated the insurer's conduct.  *See id.* at 913–14.

Selective is right, though, that whether it failed to act as a reasonable insurer is irrelevant to the objective prong.  *See id.* at 910–12.  It is also irrelevant whether Selective actually relied on its proposed bases for denial.[4]  *See id.* at 910 (noting "the factfinder should consider the level of investigation a *reasonable insurer* would have conducted under the circumstances of the case and how [it] would have evaluated the claims in light of that investigation." (emphasis added)).  The district court erred by including Selective's failings and whether it actually relied on its proposed bases for denial in the objective prong analysis.

_____

[3]Selective also says the court failed to consider its reliance on the advice of counsel.  But this defense was not raised or offered as a basis for denial until this appeal, so we will not consider it.  *P&O Nedlloyd, Ltd. v. Sanderson Farms, Inc.*, 462 F.3d 1015, 1019 (8th Cir. 2006).

[4]The reasonable insurer need not be all-knowing.  But if a basis for denial would have been discovered through a full investigation under the circumstances and a reasonable insurer would have relied on that basis, then the objective prong is not met.

Despite this error, the court reached the correct conclusion on independent grounds, so we find the error was harmless. The district court acknowledged that the anonymous letter would have led a reasonable insurer to open a fraud investigation. Once it did, its focus would be to "(1) identif[y] what Sela had actually said and (2) investigate[] whether what Sela had actually said was true."[5] D. Ct. Dkt. 282 at 34. A reasonable insurer would have seen its files "bulging with documents" showing that Sela was not claiming to repair all of the 2010 damage. *Id.* at 36 n.17. With that in mind, it would have identified the claimed repairs, estimated their cost, and determined whether Sela could have spent just over $200,000 on them—the amount the court estimated his documents supported. In doing so, the reasonable insurer would have found that Sela had spent about $50,000 less than what would be expected for the repairs he claimed to have made—a far cry from the $300,000 difference on which Selective fixated. The court concluded the difference would be "much less suspicious" to a reasonable insurer, especially considering Sela's ability to leverage his insider contacts as the owner of a large roofing company and his all-cash payments to get lower prices. *Id*. at 39 n.18.

The court then exhaustively addressed each basis for denial that Selective offered throughout the litigation. Take the report by Selective's forensic expert that concluded, "much of the work that Mr. Sela indicated was done was not done." Selective App. Vol. III at 764. The court cited a leading treatise to state the obvious standard of conduct: "an insurer cannot rely on an expert opinion where [it] has failed to provide the expert with important information in its possession." D. Ct. Dkt.

---

[5]Selective argues the court erred by not requiring any evidence of a standard of conduct. It misrepresents the court's conclusion that it did not need *expert testimony* because determining reasonable conduct necessary to uncovering a lie is not "so esoteric" that a jury would need an expert to explain it. D. Ct. Dkt. 282 at 32. We agree with the district court.

at 40 (citing New Appleman on Insurance Law Library Edition § 55.04[2][b][ii] (2018)). Selective's conduct rendered the report unreliable when it sent the expert the highly prejudicial anonymous letter and failed to provide him with "information that he said he needed to reach accurate conclusions." *Id.* at 43. The court did not need to consider what would have happened if Selective had not tainted its own expert; it just needed to determine whether a reasonable insurer would have relied on that piece of evidence. The court found it would not.

The court determined that no reasonable insurer would have relied on any of Selective's proposed bases to deny the hail claim for fraud. Weighed against an explainable difference between what Sela was claiming to have completed and what he actually paid for the 2010 damage, the court found there was no reasonable basis to deny Sela benefits under his policy. This holding was not clear error.

## B. Subjective Prong

We turn next to the subjective prong, which Selective says is not supported by sufficient evidence. The district court found that Selective—through its adjuster and investigators—recklessly disregarded the fact that it lacked a reasonable basis for denying the benefits. Reckless disregard can be shown through the insurer's "indifference to facts or to proofs submitted by the insured." *Peterson*, 946 N.W.2d at 912 (citation omitted). Here, an analysis of the insurer's failure to properly investigate and evaluate the claim is appropriate. *Id.*

The record supports the district court's conclusion. Selective "flailed about" trying to identify who made the decision to deny Sela's claim and what fraudulent

statements supported the decision.[6]  D. Ct. Dkt. 282 at 53.  Its decision ultimately came after counsel's advice that it could deny Sela's claim for fraud and her recommendation to move forward with a declaratory judgment action.  The adjuster, "with virtually *no knowledge whatsoever* of Sela's alleged fraud," agreed.  *Id.* at 45–46.  The two special investigators—one of whom "admitted that she *did not care*" what Sela may or may not have said—also agreed.  *Id.* at 46.

The problem here was that the decision-makers agreed to a recommendation formed on obviously mistaken premises:  (1) that Sela had said under oath that he had repaired all of the 2010 damage, and (2) that the forensic expert's report showed he had not.  Had the decision-makers not been blinded by "personal animosity toward Sela," they might have pulled the emergency brake, recognizing that Sela repeatedly said he had not repaired all of the damage, including in his statement under oath.  *Id.* They would have also found that the expert's report was "riddled with errors" and wholly unreliable.  *Id.* at 42; *see also Peterson*, 946 N.W.2d at 916 (finding reckless indifference where investigator "developed an early opinion that [the] claim was of no value . . . and from then on, that opinion was etched in stone").  Instead, they ignored facts that supported Sela's claim, recklessly disregarding the lack of a reasonable basis to deny it.

---

[6]Throughout the litigation, no one was quite sure who at Selective decided to deny Sela's claim.  At the "eleventh-hour," Selective said its Director of Property Large Loss Claims was the decision-maker.  D. Ct. Dkt. 282 at 29.  The district court did not credit this designation, instead agreeing with Selective's earlier statement that a committee of people made the decision.  We will not second-guess the court's credibility determinations. *See Anderson v. Bessemer City,* 470 U.S. 564, 575 (1985).

Finally, Selective challenges the district court's award of prejudgment interest. Under Minn. Stat. § 549.09, Sela is entitled to prejudgment interest on an award for money. That interest begins to accrue with the first of three possible triggering events: (1) the commencement of an action; (2) an arbitration demand; or (3) a written notice of a claim. Minn. Stat. § 549.09, subdiv. 1(b)–(c). If written notice is the triggering event, an action must commence within two years. *Id.* The district court held that Sela was entitled to interest on his damages award because he commenced an action within two years of his written notice of a claim, the July 2015 property loss notice.[7] We review the district court's findings of fact for clear error and its conclusions of law *de novo*. *See Darst-Webbe Tenant Ass'n Bd. v. St. Louis Hous. Auth.*, 339 F.3d 702, 710 (8th Cir. 2003).

Without offering an alternative, Selective argues that the property loss notice is insufficient written notice of a claim. The Minnesota Supreme Court has not interpreted the phrase, and federal district judges are split on what it requires. *Compare Hous. & Redev., Auth. of Redwood Falls v. Hous. Auth. Prop. Ins.*, Civ. No. 14-4741 (PAM/HB), 2017 WL 5197135 (D. Minn. 2017) (email with signed proof of loss statement is insufficient absent demand for payment), *with Creekview of Hugo Ass'n v. Owners Ins. Co.*, 386 F. Supp. 3d 1059, 1068–69 (D. Minn. 2019) (email from attorneys asking to open claim and including cause of loss is sufficient).

---

[7]Selective says that the only possible triggering event was appraisal because that is what led to Sela's award, and appraisal is not an action. We agree with the district court that Sela's award flowed directly from his property loss notice and counterclaim. Without it, the jury would never have "found—as a matter of law and logic—that Selective breached the insurance contract and had to pay damages to Sela." D. Ct. Dkt. 282 at 58.

The district court adopted the *Creekview* approach that "a first-party claim with a homeowner's insurer is a demand for payment." D. Ct. Dkt. 282 at 60. And the Minnesota Court of Appeals in *Blehr v. Anderson* recently supported this approach. 955 N.W.2d 613, 620–21 (Minn. Ct. App. 2021). *Blehr* concluded from the limited caselaw that the statute did not "require a demand for a specific amount of money; but [it] must be sufficient, in light of the circumstances known to the noticed party, to allow [it] to determine 'its potential liability from a generally recognized objective standard of measurement.'" *Id.* (citation omitted).

Because the Minnesota Court of Appeals offers "the best evidence of what state law is" on this issue, *Minn. Supply Co. v. Raymond Corp.*, 472 F.3d 524, 534 (8th Cir. 2006), we will follow *Blehr* here. Consistent with *Blehr*, the district court found that Selective had enough information in the property loss notice "to assess its potential liability." D. Ct. Dkt. 282 at 60. The record supports this conclusion. Selective knew from the loss notice that there was hail damage to the roof of a property covered by a $1.6 million policy. Three days after the notice, Selective assigned its first adjuster. And two days after that, the adjuster was investigating the damage. The district court did not err by awarding prejudgment interest to Sela.

V.

The judgment of the district court is affirmed.

_____