# United States Court of Appeals
### For the Eighth Circuit

_____

Nos. 21-3195/21-3197

_____

SD Voice and Cory Heidelberger

*Appellees/Cross-Appellants*

v.

Kristi Noem, Governor of South Dakota, in her official capacity;
Marty Jackley, Attorney General of South Dakota, in his official capacity; and
Monae Johnson,[1] Secretary of State of South Dakota, in her official capacity

*Appellants/Cross-Appellees*

_____

Appeal from United States District Court
for the District of South Dakota

_____

Submitted: October 19, 2022
Filed: February 17, 2023

_____

Before LOKEN, GRUENDER, and GRASZ, Circuit Judges.

_____

---

[1]Marty Jackley has been elected to serve as Attorney General of South Dakota, and Monae Johnson has been elected to serve as Secretary of State of South Dakota. Both are substituted under Federal Rule of Appellate Procedure 43(c).

GRASZ, Circuit Judge.

SD Voice and Cory Heidelberger raised a First Amendment challenge to South Dakota's statutory deadlines to submit petitions to initiate South Dakota statutes and to amend the South Dakota Constitution. After a bench trial, the district court agreed the filing deadline for petitions to initiate statutes violates the First Amendment to the United States Constitution, but the filing deadline for petitions to amend the state Constitution does not. The district court then permanently enjoined three South Dakota officials from enforcing the unconstitutional deadline and crafted a new filing deadline. We affirm in part, reverse in part, and remand.

## I. Background

The South Dakota Constitution authorizes its citizens to propose changes to state statutes and the state Constitution. *See* S.D. Const. art. III, § 1 (statutes); S.D. Const. art. XXIII, § 1 (Constitution). There are a number of hurdles to clear before a proposed change is placed on a statewide ballot, including obtaining the requisite number of petition signatures. *See* S.D. Codified Laws §§ 2-1-1, 2-1-1.3(4). Petitions to initiate a state statute "shall be signed by not less than five percent of the qualified electors of the state." *Id.* § 2-1-1; *see also* S.D. Const. art. III, § 1. And petitions to amend the state Constitution must be "signed by qualified voters equal in number to at least ten percent of the total votes cast for Governor in the last gubernatorial election." S.D. Const. art. XXIII, § 1.

To meet the threshold, circulators cannot start collecting signatures too early because "no signature may be obtained more than twenty-four months preceding the general election that was designated at the time of filing of the full text." S.D. Codified Laws §§ 2-1-1.2, 2-1-1.1. And the statutory deadline to file petitions to initiate statutes or amend the state Constitution is "one year *before* the next general election." *Id.* (emphasis added); *see also* S.D. Const. art. XXIII, § 1. This results in a one-year circulation period, which ends a full year prior to a general election. As the parties note, the filing deadline had previously been April of a general election

-2-

year and was moved to November of the year prior to the general election. *See* 2009 S.D. Sess. Laws ch. 64 §§ 8, 11.

SD Voice, a ballot question committee operated by Cory Heidelberger, seeks to use petitions to effectuate political change. Frustrated with recent changes to South Dakota law that impacted its mission, SD Voice sued South Dakota's Governor, Attorney General, and Secretary of State in their official capacities.[2] In particular, SD Voice challenged the filing deadlines under South Dakota Codified Laws §§ 2-1-1.1 and 2-1-1.2 as well as the recently enacted HB 1094. After a bench trial, the district court concluded HB 1094 was unconstitutional but did not reach SD Voice's claim regarding the filing deadlines under South Dakota Codified Laws §§ 2-1-1.1 and 2-1-1.2. *See SD Voice v. Noem*, 432 F. Supp. 3d 991, 1003 (D.S.D. 2020).

SD Voice and South Dakota appealed. *See SD Voice v. Noem*, 987 F.3d 1186, 1188 (8th Cir. 2021). The South Dakota Legislature then enacted SB 180, which substantially changed HB 1094. *Id.* Accordingly, we dismissed the appeals as moot but remanded for the district court to consider the unresolved claim. *Id.* at 1191–92. That claim, as pled in SD Voice's amended complaint, was a First Amendment challenge to the filing deadlines under South Dakota Codified Laws §§ 2-1-1.1 and 2-1-1.2. This appeal exclusively focuses on these statutory filing deadlines.

On remand, the district court applied exacting scrutiny to the challenged statutes and held South Dakota's deadline to submit petitions to initiate state statutes violates the First Amendment, but the deadline to submit petitions to amend the state Constitution does not. *See SD Voice v. Noem*, 557 F. Supp. 3d 937, 943, 946 (D.S.D. 2021). The district court reasoned the filing deadlines restricted speech by making it less likely SD Voice would be able to collect the necessary signatures to qualify for the statewide ballot. *Id.* at 942–43. Turning to the State's purported interests,

---

[2]We refer to SD Voice and Heidelberger collectively as "SD Voice." We also refer to the South Dakota Governor, Attorney General, and Secretary of State collectively as "South Dakota."

the district court recognized legitimate state interests in administrative efficiency and election integrity. *Id.* at 945. Yet it concluded there was no evidence "in the record that even suggests that the one-year requirement lends anything of value to the State." *Id.* at 945–46. After noting that South Dakota election officials complied with a prior six-month filing deadline, the district court held "the First Amendment requires a filing deadline no earlier than six months before the election." *Id.* at 945.

The district court's conclusion as to the deadline for petitions to amend the state Constitution was different. It reasoned the stakes for petitions to amend the state Constitution "are much higher" because "constitutional amendments cannot be undone, except by further constitutional amendments." *Id.* at 946. The district court also pointed to an interest in ensuring constitutional amendments "are well thought out" and that corresponding petitions comply with various legal requirements. *Id.* Thus, the district court held "the one-year filing deadline for Constitutional amendment petitions passes exacting scrutiny." *Id.*

The district court then entered a permanent injunction, severed the unconstitutional deadline from the rest of the statute, and crafted a new filing deadline: "the first Tuesday in May during the year of the election." *Id.* at 948–49. SD Voice and South Dakota appealed.

## II. Analysis

We review de novo SD Voice's challenge under the First Amendment to the United States Constitution. *Calzone v. Summers*, 942 F.3d 415, 419 (8th Cir. 2019) (en banc). The district court awarded a permanent injunction after a bench trial. "A permanent injunction requires the moving party to show actual success on the merits." *Miller v. Thurston*, 967 F.3d 727, 735 (8th Cir. 2020) (quoting *Oglala Sioux Tribe v. C & W Enters., Inc.*, 542 F.3d 224, 229 (8th Cir. 2008)). "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the

-4-

district court, reviewable on appeal for abuse of discretion."[3]   *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

## A.  Filing Deadline for Petitions to Initiate State Statutes

The district court concluded SD Voice was burdened by the filing deadline for petitions to initiate state statutes and held the deadline fails exacting scrutiny. *See* S.D. Codified Laws § 2-1-1.2.  South Dakota argues the district court erred by concluding the filing deadline implicates the First Amendment.  South Dakota insists that even if the filing deadline restricts speech, any First Amendment burden is not severe and its interests justify the restriction.

The First Amendment, incorporated against the States under the Fourteenth Amendment, prohibits laws that abridge the freedom of speech.  *See* U.S. Const. amend. I; *Meyer v. Grant*, 486 U.S. 414, 420 (1988).  SD Voice challenges South Dakota's filing deadlines for petitions as violative of the freedom of speech. Because SD Voice seeks "injunctive relief that would 'reach beyond the particular circumstances' here, it brings a facial challenge."  *Missourians for Fiscal Accountability v. Klahr*, 892 F.3d 944, 948 (8th Cir. 2018) (quoting *John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010)).  To succeed on its facial challenge, SD Voice must show (1) "no set of circumstances exists under which the [filing] deadline would be valid"; (2) the filing deadline "lacks any plainly legitimate sweep"; or (3) the filing deadline "is overbroad because a substantial number of its applications are unconstitutional, judged in relation to its plainly legitimate sweep."  *Id.* (cleaned up) (quoting *Phelps-Roper v. Ricketts*, 867 F.3d 883, 891–92 (8th Cir. 2017)).

---

[3]A district court's factual findings after a bench trial are reviewed for clear error.  *Selective Ins. Co. of S.C. v. Sela*, 11 F.4th 844, 848 (8th Cir. 2021).  In its opening brief, South Dakota does not argue the district court's factual findings are clearly erroneous.  Accordingly, South Dakota has waived any argument challenging the factual findings.  *See United States v. Cooper*, 990 F.3d 576, 583 (8th Cir. 2021) ("Ordinarily, a party's failure to make an argument in its opening brief results in waiver of that argument.").

## 1. First Amendment

We begin with the threshold question of whether South Dakota's petition filing deadline under South Dakota Codified Laws § 2-1-1.2 implicates the First Amendment. Participation in the initiative process is created by state law, not the United States Constitution. *Dobrovolny v. Moore*, 126 F.3d 1111, 1113 (8th Cir. 1997). Accordingly, South Dakota has "considerable leeway to protect the integrity and reliability of the initiative process . . . ." *Buckley v. Am. Const. Law Found., Inc.*, 525 U.S. 182, 191 (1999). "Still, certain rules and requirements related to the process may nevertheless implicate the Federal Constitution, including the First Amendment." *Miller*, 967 F.3d at 737 (collecting cases). We must therefore "guard against undue hindrances to political conversations and the exchange of ideas." *Buckley*, 525 U.S. at 192.

"The circulation of an initiative petition of necessity involves both the expression of a desire for political change and a discussion of the merits of the proposed change." *Meyer*, 486 U.S. at 421. "Thus, the circulation of a petition involves the type of interactive communication concerning political change that is appropriately described as 'core political speech.'" *Id.* at 421–22. In *Meyer*, the Supreme Court held Colorado's statute criminalizing payment to petition circulators "involves a limitation on political expression" that triggers the First Amendment's protections. *Id.* at 420. The Supreme Court reasoned that the prohibition on paying

> petition circulators restricts political expression in two ways: First, it limits the number of voices who will convey appellees' message and the hours they can speak and, therefore, limits the size of the audience they can reach. Second, it makes it less likely that appellees will garner the number of signatures necessary to place the matter on the ballot, thus limiting their ability to make the matter the focus of statewide discussion.

*Id.* at 422–23.

Signing a petition is an expression of a political view, even if that view is as simple as believing an issue should be voted on by the entire state. *See Reed*, 561 U.S. at 194–95. And signing a petition is "core political speech." *Nev. Comm'n on Ethics v. Carrigan*, 564 U.S. 117, 128 (2011) (citing *Meyer*, 486 U.S. at 421–22; *Reed*, 561 U.S. at 195); *see also Buckley*, 525 U.S. at 186 (characterizing *Meyer* as holding petition circulation is core political speech). Indeed, the First Amendment is designed "to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *Roth v. United States*, 354 U.S. 476, 484 (1957); *accord Lane v. Franks*, 573 U.S. 228, 235–36 (2014).

The filing deadline under South Dakota Codified Laws § 2-1-1.2 implicates these principles. SD Voice has sought and will continue to seek political change via circulating petitions to amend South Dakota law. South Dakota's filing deadline, however, "limits the number of voices who will convey [the proposed] message" during the year before the election. *Meyer*, 486 U.S. at 422–23. In fact, it effectively prohibits circulating petitions during the year prior to the election. SD Voice put on evidence explaining the benefit of having more time to secure signatures, including more chances to speak with voters about issues and train circulators. South Dakota's filing deadlines also make "it less likely that [SD Voice] will garner the number of signatures necessary to place [a] matter on the ballot, thus limiting [its] ability to make [its political causes] the focus of statewide discussion." *Id.* at 423. As SD Voice aptly observes, a "person who circulates a petition within one year of the election, or who signs such a petition, engages in a futile act." And in Heidelberger's experience, voters pay more attention to political issues during an election year. This is not surprising. It is common sense that cabining core political speech in the form of petition circulation to a period no closer than a year before an election would dilute the effectiveness of the speech. In these ways, the Supreme Court's reasoning that applied to the restriction in *Meyer* parallels the filing deadline here.

Eighth Circuit precedent also lends support to SD Voice's concerns. In *Miller*, we reasoned that Arkansas's in-person signature requirement, which was enforced during the pandemic, "affect[ed] the communication of ideas associated with the

circulation of [a] petition." 967 F.3d at 738. In particular, the law burdened the plaintiffs' "ability to express their position on a political matter by signing [an] initiative petition." *Id.* In *Dobrovolny*, by contrast, we considered whether a Nebraska constitutional provision violated the First Amendment. 126 F.3d at 1112. The challenged provision established the number of petition signatures necessary to place an initiative on the state ballot: ten percent of Nebraska's registered voters, which was determined on the date of the filing deadline. *Id.* We held the plaintiffs' "inability to know in advance the exact number of signatures required in order to place their initiative measures on the ballot in no way restricted their ability to circulate petitions or otherwise engage in political speech, and therefore the decision in *Meyer* is inapplicable." *Id.*

Under South Dakota's law, an individual cannot sign a petition in the year immediately preceding a general election. Thus, the deadline burdens the "ability to express [a] position on a political matter by signing [an] initiative petition." *Miller*, 967 F.3d at 738. And unlike *Dobrovolny*, where the challenged law did not restrict circulation of petitions, here South Dakota has banned all participation in the petition process one year before the next election. *See* 126 F.3d at 1112–13 (distinguishing *Meyer* by noting the unconstitutional Colorado statute outlawing payments to petition circulators "limited the number of voices available to convey a particular message, as well as the size of the audience that could be reached").

South Dakota nonetheless claims its citizens are still "free to propose an initiated measure of their choosing and to convey their message to all who will listen." South Dakota's observation speaks to the degree of burden rather than the existence of a burden. The Supreme Court has rejected the argument that a statute's burden on expression "is permissible because other avenues of expression remain open," reasoning a law that leaves open other avenues of communication does not relieve the burden on protected political discourse. *Meyer*, 486 U.S. at 424. So too here.

The only other argument South Dakota raises regarding whether the deadline implicates the First Amendment is evidence of successful petitions despite the filing deadline. In support, South Dakota relies on *Libertarian Party of Arkansas v. Thurston*, 962 F.3d 390 (8th Cir. 2020), a case involving Arkansas's petition requirements for new political parties. In that context, we explained "parties' past success or failure in a particular state under . . . prior requirements is relevant to show the necessity or burdensomeness of the restrictions" that are being challenged. *Id.* at 399. Although the record here shows there were still some successful petitions after the one-year filing deadline was adopted, the record also shows the number of petitions that made it onto the statewide ballot decreased from 2016 to 2020. On this record and under *Meyer* and *Miller*, we agree with the district court that South Dakota's filing deadline under South Dakota Codified Laws § 2-1-1.2 implicates the First Amendment.

## 2. Level of Scrutiny

Having established the filing deadline implicates the First Amendment, we next consider the level of scrutiny. We do not apply strict scrutiny to every initiative petition law that implicates the First Amendment. Instead, under circuit precedent, we apply the *Anderson/Burdick* sliding standard.[4] *Miller*, 967 F.3d at 739 (citing *Initiative & Referendum Inst. v. Jaeger*, 241 F.3d 614, 616 (8th Cir. 2001)). Under this standard, "we weigh the character and magnitude of the burden the State's rule imposes on First Amendment rights against the interest the State contends justify that burden, and consider the extent to which the State's concerns make the burden necessary." *Id.* (cleaned up) (quoting *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997)). If the filing deadline imposes a severe burden on the ability to engage in political speech, strict scrutiny applies. *Id.* A severe burden is one that goes "beyond the merely inconvenient." *Id.* (quoting *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 205 (2008) (Scalia, J., concurring in the judgment)). If the burden is not severe, we review the law "to ensure it is reasonable,

___

[4]*See Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Burdick v. Takushi*, 504 U.S. 428 (1992).

nondiscriminatory, and furthers an important regulatory interest." *Id.* at 740 (citing *Timmons*, 520 U.S. at 358).

The filing deadline clearly limits the number of voices that will convey a message on the ballot by pushing back the deadline to one year before a general election. Petition circulation, as a result, is effectively banned an entire year before the general election. The deadline further makes it less likely that SD Voice will secure the number of signatures necessary to place the matter on the ballot, thus limiting the ability to advance statewide discussion on political issues. *Cf. Libertarian Party of Ark.*, 962 F.3d at 400 (noting, for third party candidates, that "deadlines far before election day are problematic because of the general disinterest of potential voters so far removed from elections"). Accordingly, we harbor doubt that the burden on the ability to engage in political speech as a result of the deadline is less than severe. But we need not decide this issue because we conclude the statute fails under scrutiny for burdens that are less than severe. *Cf. Dakotans for Health v. Noem*, 52 F.4th 381, 389 (8th Cir. 2022).

### 3. Scrutiny

Even if the burden on the ability to engage in political speech was less than severe, we would review the deadline "to ensure it is reasonable, nondiscriminatory, and furthers an important regulatory interest." *Miller*, 967 F.3d at 740. South Dakota argues its interests are sufficient to justify the restrictions. As best we can tell, South Dakota offers three distinct interests: election integrity, administrative efficiency, and the Legislature's ability to respond to petitions.

We begin with election integrity. South Dakota's "interest in protecting the integrity of its initiative process" is not only an important interest, but a "paramount" one. *Miller*, 967 F.3d at 740 (quoting *Hoyle v. Priest*, 265 F.3d 699, 704 (8th Cir. 2001)); *see also Buckley*, 525 U.S. at 187 (recognizing "there must be a substantial regulation of elections if they are to be fair and honest"). So South Dakota's interest in election integrity cannot be disputed. The problem for South Dakota is that the

district court found "[t]here is nothing in the record that even suggests that the one-year requirement lends anything of value to the State."

On appeal, South Dakota claims "the one-year filing deadline ensures [the Secretary of State's Office has] a sufficient amount of time to verify the signatures on the petition." It points to trial testimony from South Dakota's Director of Division of Elections Kea Warne. Warne was asked, "how does that one-year deadline assist the secretary of state's office in completing its duties?" Warne responded:

> So our state is one of the smallest states for the number of people we have in the division of elections. And again, I kind of mentioned . . . most of the duties that we have. There are multiple processes we go through. And . . . after session, too, will be the implementation of new laws. We have to change our programming in some of our systems. We're doing an upgrade on our registration file right now currently. It takes a lot of time to test . . . . Just to get all of our duties done by [the] end, meet all of the requirements leading up to a primary and general election, there is [sic] a lot of deadlines that have to occur.

Warne was then asked, "Why is the longer deadline necessary for a ballot question petition as opposed to a candidate petition?" She explained: "The ballot questions have, you know, a lot more signature requirements . . . . [I]t's just under 17,000 for a[n] initiative or referred law, and it's just under, I think, 34,000 for a constitutional amendment."

South Dakota has not tied these responsibilities to election integrity. The only explanation South Dakota offers for its filing deadline one year before the general election is the number of signatures it must review in addition to other legal obligations. But the Secretary of State reviews a random sample of collected signatures. *See* S.D. Codified Laws §§ 2-1-15 and 2-1-16; S.D. Admin. R. 5:02:08:00.05 (prescribing the "method for conducting the random sample" for petitions). As Warne explained at trial, the random sample has been as low as 2.3% in recent years. With such a small sample size, it is no wonder Warne also testified

that South Dakota has validated "two referenda petitions . . . in two days each." South Dakota also reviewed all petitions submitted in 2017 within five months of the filing deadline and reviewed all petitions submitted in 2015 within three months of the filing deadline. On this record, South Dakota has failed to show the filing deadlines further an important interest. *See Miller*, 967 F.3d at 740.

True, "states are not required to present elaborate, empirical verification of the weightiness of their asserted justifications." *Id.* (cleaned up) (quoting *Timmons*, 520 U.S. at 364). "They can respond to potential deficiencies in the electoral process with foresight" so long as "the response is reasonable and does not significantly impinge on constitutionally protected rights." *Id.* (internal quotation marks omitted); *see also Jaeger*, 241 F.3d at 616 (examining evidence presented in support of a state's interest). But South Dakota merely relies on a bare assertion of election integrity rather than evidence or a reasonable response connected to the filing deadline. *Cf. Libertarian Party of Ark.*, 962 F.3d at 403; *Calzone*, 942 F.3d at 424.

South Dakota's other asserted interests suffer from a similar problem. For instance, South Dakota next offers administrative efficiency, which is a legitimate interest. *See Buckley*, 525 U.S. at 187 (recognizing "there must be a substantial regulation of elections . . . if some sort of order, rather than chaos, is to accompany the democratic process"). South Dakota's interest is especially noteworthy given its staff of fourteen people. This small staff must comply with numerous deadlines and responsibilities, including petition validation, training, updating publications, meeting with the board of elections, and implementing new laws.

The district court, however, concluded a deadline of six months before a general election is "more than adequate time to do the work that must be done." The district court noted South Dakota "has had no trouble complying with that deadline for many years." In support, the district court considered testimony that South Dakota met its obligations under the prior filing deadline. South Dakota's success in meeting the prior deadlines should come as no surprise because the deadline to certify ballot questions is twelve weeks before the general election—i.e., nine

months *after* the filing deadline. *See* S.D. Codified Laws § 12-13-1. Yet the nine-month gap between the general election and the filing deadline is unexplained. Indeed, South Dakota has recently validated two referenda petitions "in two days each." Here, too, South Dakota has failed to show the filing deadlines further an important regulatory interest. *See Miller*, 967 F.3d at 740.

Finally, South Dakota offers as a legitimate interest the Legislature's ability to respond to petitions. South Dakota characterizes such an interest as "legislators [should] be able to plan and prepare for any measures that significantly impact[] the state's budget." South Dakota offers no authority recognizing this interest. Assuming, without deciding, the interest exists, the filing deadline does virtually nothing to advance it.

The filing deadline is November, specifically "one year before the next general election." S.D. Codified Laws § 2-1-1.2. Under the district court's injunction, the deadline is six months before the general election in November. A petition submitted as late as May—i.e., six months before the general election—would be certified no later than twelve weeks before the November election. *Id.* § 12-13-1. In November, if the voters approve a certified ballot question, the corresponding law will go into effect in July of the following year. *Id.* § 2-1-12. But before then, starting in January, the South Dakota Legislature begins its legislative session. S.D. Const. art. III, §§ 6–7. During that legislative session, the Legislature could consider potential ramifications of any laws approved by the voters but not yet in effect.

In these ways, SD Voice correctly observes South Dakota "already has what it says it needs: an intervening legislative session between a general election and the date an initiated law becomes effective." *See Buckley*, 525 U.S. at 196 (rejecting an asserted interest as already "served" by a separate legal requirement); *Meyer*, 486 U.S. at 425–26 (rejecting an asserted interest as already "adequately protected" by other means). South Dakota might prefer a second legislative session "to respond to the proposed initiative measure before it is placed on the ballot," but South Dakota

did not present evidence of how a second session satisfies this interest. South Dakota, having adopted the petition process, must satisfy the First Amendment. *See Reed*, 561 U.S. at 195 ("The State, having chosen to tap the energy and the legitimizing power of the democratic process, must accord the participants in that process the First Amendment rights that attach to their roles." (cleaned up)).

To summarize, South Dakota's filing deadline of one year before a general election "imposes a burden on political expression that the State has failed to justify." *Buckley*, 525 U.S. at 195 (quoting *Meyer*, 486 U.S. at 428). In other words, South Dakota failed to provide evidence connecting the one-year deadline to its asserted interests. *Cf. Plyler v. Doe*, 457 U.S. 202, 228–29 (1982) (assuming a state interest was legitimate but noting the absence of evidence in the record in support). We therefore find no error in the district court's conclusion that the filing deadline under South Dakota Codified Laws § 2-1-1.2 is unconstitutional under the First Amendment.

### B. Filing Deadline for Petitions to Amend the State Constitution

SD Voice's First Amendment claim also took issue with the statutory deadline, under South Dakota Codified Laws § 2-1-1.1, to submit petitions to amend the state Constitution. The district court rejected this claim, holding the statute survives exacting scrutiny. On appeal, SD Voice argues the district court should have reached the same conclusion as it did for the filing deadline for petitions to initiate State statutes.

Neither the district court nor South Dakota offers any legal basis for distinguishing the deadlines to submit petitions to initiate state statutes from petitions to amend the state Constitution. Nor do we discern one. The statutory language, the proffered state interests, and the evidence are virtually identical for both deadlines. Applying the same legal framework and record available for the filing deadline under South Dakota Codified Laws § 2-1-1.2, we are left with no choice but to conclude the filing deadline under South Dakota Codified Laws § 2-1-

-14-

1.1 also violates the First Amendment. We thus reverse the district court's holding that the filing deadline in South Dakota Codified Laws § 2-1-1.1 is constitutional.[5]

## C. Scope of Relief

The district court permanently enjoined the South Dakota officials from enforcing the filing deadline under South Dakota Codified Laws § 2-1-1.2. But it also created a new deadline of six months before the general election. South Dakota argues the district court erred by creating a new deadline. We agree.

Rather than enjoin the unconstitutional provision and allow the South Dakota Legislature to decide how to respond, the district court took an "additional step" to remedy a First Amendment violation. *See Miller*, 967 F.3d at 733 n.1. Yet, prescribing a new filing deadline is outside the scope of the district court's authority. *See Republican Party of Ark. v. Faulkner Cnty.*, 49 F.3d 1289, 1301 (8th Cir. 1995) ("Cognizant of our role as a federal court, we do not purport to advise Arkansas on the best means of rendering constitutional its election code: that decision rests with the sound judgment of the Arkansas legislature."). We thus remand with instructions to modify the permanent injunction and remove the new filing deadline.

## III. Conclusion

We affirm the district court's holding that the filing deadline in South Dakota Codified Laws § 2-1-1.2 violates the First Amendment, reverse the holding that the filing deadline in South Dakota Codified Laws § 2-1-1.1 does not violate the First Amendment, and remand with instructions to modify the permanent injunction in a

---

[5]We note Article 23, Section 1 of the South Dakota Constitution requires the text of the proposed constitutional amendment and the names and addresses of its sponsors to be submitted a year before the general election. It is silent as to the deadline for petition signatures. *See* S.D. Const. art. XXIII, § 1.

manner not inconsistent with this opinion.  We further deny the dueling motions to strike party submissions.

_____